IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| PHILLIP SULAK, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. |
| § | |
| CALPINE CORPORATION, FRANK § | JURY TRIAL DEMAND |
| CASSIDY, JOHN B. HILL III, LAURIE § | |
| BRLAS, JACK A. FUSCO, MICHAEL W. § | |
| HOFFMAN, DAVID C. MERRITT, W. § | |
| BENJAMIN MORELAND, ROBERT A. § | |
| MOSBACHER JR., and DENISE M. § | |
| O'LEARY, § | |
| § | |
| Defendants. § | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Phillip Sulak ("Plaintiff"), on behalf of himself, brings this suit for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934. In support of this Complaint, Plaintiff, through counsel, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1.      Plaintiff brings this action against Calpine Corporation ("Calpine" or the "Company") and the members of Calpine's Board of Directors (the "Board" or the "Individual Defendants" as further defined below) for violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rules 14a-9, 17 C.F.R. 240.14a-9, 17 C.F.R. § 244.100, and 17 C.F.R. § 229.1015(b)(4), arising out of their efforts to sell the Company to Volt Parent, LP ("Parent") and its wholly-owned subsidiary, Volt Merger Sub, Inc. ("Merger Sub"), which were

formed by, and are affiliates of, Energy Capital Partners III, LLC ("Energy Capital Partners," and together with Parent and Merger Sub, "ECP") (the "Proposed Transaction").

2.     On August 18, 2017, Calpine and ECP announced that they had entered into an Agreement and Plan of Merger dated August 17, 2017 ("Merger Agreement"), by which ECP, through its wholly owned subsidiary, will acquire all of the outstanding shares of Calpine for $15.25 per share in cash (the "Merger Consideration"). The Proposed Transaction is valued at approximately $5.6 billion.

3.     On November 14, 2017, Calpine caused the filing of a Definitive Proxy Statement pursuant to Section 14(a) of the Securities Exchange Act of 1934 (the "Proxy Statement"). The Proxy Statement is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction. However, the Proxy Statement that was filed with the SEC is materially deficient and misleading in that it fails to provide adequate disclosures of all material information related to the Proposed Transaction. Accordingly, Plaintiff alleges herein that Defendants have violated Sections 14(a) and 20(a) of the Exchange Act by unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy Statement, even though they knew, or should have known, that the Proxy Statement was materially false and/or misleading.

4.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to Calpine's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

6. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) Calpine is headquartered in this District; and (ii) a substantial portion of the corporate transactions, actions, and wrongs complained of herein, occur in this District.

## PARTIES AND RELEVANT NON-PARTIES

8. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Calpine.

9. Defendant Frank Cassidy ("Cassidy") has served as Chairman of the Board since May 2016. Cassidy has served as a director of the Company since 2008.

10. Defendant John B. Hill III ("Hill") has served as a director, President, and Chief Executive Officer ("CEO") of Calpine since May 2014.

11. Defendant Laurie Brlas ("Brlas") has served as a director of the Company since August 2016.

12. Defendant Jack A. Fusco ("Fusco") has served as a director of the Company since 2008.

13. Defendant Michael W. Hoffman ("Hoffman") has served as a director of the Company since 2013.

14. Defendant David C. Merritt ("Merritt") has served as a director of the Company since 2006.

15. Defendant W. Benjamin Moreland ("Moreland") has served as a director of the Company since 2008.

16. Defendant Robert A. Mosbacher, Jr. ("Mosbacher") has served as a director of the Company since 2009.

17. Defendant Denise M. O'Leary ("O'Leary") has served as a director of the Company since 2008.

18. Defendants Cassidy, Hill, Brlas, Fusco, Hoffman, Merritt, Moreland, Mosbacher, and O'Leary are collectively referred to as Individual Defendants and/or the Board.

19. Calpine is a Delaware corporation and is headquartered in Houston, Texas. It maintains principal executive offices at 717 Texas Avenue, Suite 1000, Houston, Texas 77002.

20. The Individual Defendants and Calpine are referred to collectively herein as "Defendants."

## OTHER RELEVANT ENTITIES

21. Relevant non-party Energy Capital Partners is a private equity firm focused on investing primarily in North America's energy infrastructure. Energy Capital Partners focuses on acquiring and developing interests in high quality assets, contracts and businesses primarily in the following sectors: power generation, midstream oil and gas, electric transmission, energy

equipment and services, environmental infrastructure and other energy related assets. Energy Capital Partners's principal corporate offices are located at 51 John F Kennedy Pkwy # 200, Short Hills, NJ, 07078.

22. Relevant non-party Parent is a Delaware limited partnership that was formed by Energy Capital Partners for the purpose of entering into the merger agreement and completing the transactions contemplated thereby and related financing transactions.

23. Relevant non-party Merger Sub is a Delaware corporation and wholly-owned subsidiary of Parent that was formed by Energy Capital Partners on August 10, 2017, on behalf of itself, its affiliated funds and the consortium co-investors, for the purpose of entering into the merger agreement and completing the transactions contemplated thereby and related financing transactions.

## FURTHER SUBSTANTIVE ALLEGATIONS

### Company Background

24. Calpine is a power generation company with 80 power plants primarily in the United States. The Company sells power and related services to wholesale customers, including commercial and industrial end-users, state and regional wholesale market operators and our retail affiliates who serve retail customers. Additionally, the Company purchases natural gas and fuel oil for Calpine's power plants and engages in related natural gas transportation and storage transactions.

### The Proposed Transaction

25. In a press release dated August 18, 2017, the Company announced that they had entered into the Merger Agreement pursuant to which ECP along with a consortium of investors

led by Access Industries and Canada Pension Plan Investment Board will acquire Calpine for $15.25 per share in cash, or $5.6 billion.

>   26.    The announcement read, in relevant part:

> LONDON (HOUSTON, Texas) – August 18, 2017 – Calpine Corporation (NYSE:CPN), America's largest generator of electricity from natural gas and geothermal resources, today announced that it has entered into a definitive agreement under which Energy Capital Partners (Energy Capital or ECP) along with a consortium of investors led by Access Industries and Canada Pension Plan Investment Board will acquire Calpine for $15.25 per share in cash, or $5.6 billion. The purchase price represents an approximately 51% premium to Calpine's unaffected share price of $10.07 on May 9, 2017, the day prior to initial media speculation of a transaction. The transaction follows a competitive strategic review process and was unanimously approved by Calpine's Board of Directors.

> "We are very pleased to announce this proposed transaction and are confident it is in the best interests of our shareholders and stakeholders," said Frank Cassidy, Chairman of Calpine's Board of Directors. "This transaction is the result of an exhaustive review of strategic alternatives undertaken by our Board, with the assistance of outside advisors, to maximize shareholder value and unlock the company's intrinsic value, while eliminating execution risk. We are confident that this is the best outcome of that review and look forward to shareholder approval."

> "We are excited to partner with Energy Capital, a leading private equity investment firm focused on North American energy infrastructure and power assets," said Thad Hill, President and Chief Executive Officer of Calpine. "With ECP, Calpine will be able to operate as it always has - executing on our strategic objectives of providing safe and reliable power and serving our retail and wholesale customers with differentiated products and services. We will also continue to strengthen our wholesale power generation footprint, while benefiting from ECP's support, industry expertise and long-term investment horizon. In short, Calpine will continue to be the nation's premier competitive power company."

> Tyler Reeder, a partner at Energy Capital Partners, stated: "We look forward to joining forces with Calpine's talented team as they continue executing their strategy. We see significant value in Calpine's operational excellence and strong and stable cash flows and have been impressed by the Company's exceptional leadership and talented employees. We do not expect to make any changes to the way Calpine operates its business and intend to remain focused on providing the high level of service to which Calpine's wholesale and retail customers have become accustomed. Finally, we do not intend to make any

changes to the Company's financial policy or previously announced $2.7 billion deleveraging plan."

Calpine will maintain its corporate headquarters in Houston, Texas with the current management team expected to remain in place.

**"Go-Shop" Period**
The agreement includes a 45-day "go-shop" period, during which Calpine, with the assistance of its legal and financial advisors, can actively solicit, evaluate and potentially enter into negotiations with parties that offer superior alternative proposals. The agreement provides for the payment of a termination fee by Calpine of $142 million to the investor consortium in the event that the agreement is terminated for a superior proposal; except that the termination fee will be $65 million if Calpine terminates the agreement for a superior proposal from certain exempted persons prior to 12:01 a.m., Eastern time, on the 106th day after the date of the agreement. There can be no assurance that this process will result in a superior proposal. Calpine does not intend to disclose developments during this process unless and until its Board has made a decision with respect to any potential superior proposal.

**Stockholder and Regulatory Approval**
The proposed transaction is subject to approval by stockholders representing a majority of outstanding shares of common stock of Calpine. In addition, the transaction is subject to expiration or termination of any applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act. Other necessary regulatory filings include Federal Energy Regulatory Commission (FERC), New York Public Service Commission (NYPSC), the Public Utility Commission of Texas (PUCT) and other states, as necessary.

The parties currently expect the transaction to close in the first quarter of 2018.

**Investor Consortium Funding**
Along with Energy Capital Partners, the investor consortium is led by Access Industries and Canada Pension Plan Investment Board. An entity wholly owned and controlled by ECP and its consortium will fund 100% of the equity required to consummate the transaction. The transaction is not subject to a financing condition. Calpine expects both Standard and Poor's and Moody's Investors Service to affirm Calpine's credit ratings.

**The Materially Misleading and Incomplete Proxy Statement**

27. On November 14, 2017, Defendants filed, or caused to be filed, a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Calpine

stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

28. Specifically, as set forth below, the Proxy Statement omits to disclose to Company stockholders material information or provides them with materially misleading information concerning: (i) the valuation analyses prepared by Lazard Frères & Co. LLC ("Lazard"); and (ii) conflicts of interest surrounding Lazard. Accordingly, Plaintiff, a Calpine stockholder, is being asked to vote for the Proposed Transaction without all material information at his disposal.

*Material Omissions Concerning Lazard's Financial Analyses*

29. The Proxy Statement describes Lazard's fairness opinion and the various valuation analyses it performed in support of their opinions. However, the description of Lazard's fairness opinion and the underlying analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Calpine public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Lazard's fairness opinion in determining whether to vote in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Calpine stockholders.

30. Specifically, the Proxy Statement fails to disclose various material elements of the financial analyses performed by Lazard. For example, Lazard performed a *Selected Public Company Analysis*, which was presented to the Board, yet the Proxy Statement omits to disclose the individual multiples and financial metrics for each of the three companies observed by Lazard in its analysis.

31.     Additionally, with respect to Lazard's *Selected Precedent Transactions Multiple Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions observed by Lazard in its analysis.

32.     Furthermore, Lazard performed two separate *Discounted Cash Flow Analysis*, which were also presented to the Board. One utilized the Company's June 2017 Projections and the second utilized the Updated February 2017 Marketing Projections. However, with regard to both analyses, the Proxy Statement omits to disclose: (i) a reconciliation of the Company's the Unlevered Free Cash Flows and Levered Free Cash Flows; (ii) the reason Lazard deemed it appropriate to perform a Discounted Cash Flow Analysis of Calpine using the Company's levered free cash flows; (iii) the Company's current and projected NOLs as used in the analyses; (iv) the actual inputs and assumptions underlying the three different discount rate ranges selected by Lazard (*i.e*., the discount rates applied to the Company's unlevered free cash flows, levered free cash flows, and NOLs); (v) the reason Lazard excluded the trading multiples of Vistra Energy Corp. in determining what terminal year multiples to apply to Calpine; (vi) the individual implied price per share ranges that resulted from each of Lazard's analyses using the Company's Unlevered Free Cash Flows and Levered Free Cash Flows (rather than an average of the two analyses); and (vii) the perpetuity growth rate ranges implied by each of Lazard's analyses.

33.     Finally, with regard to Lazard's *Illustrative Discounted Future Stock Price Analysis*, the Proxy Statement fails to disclose: (i) Lazard's basis for selecting terminal year enterprise value-to-EBITDA multiples of 7.25x to 8.25x, and the reason they differ from the terminal year multiples applied in Lazard's Discounted Cash Flow Analyses; (ii) the Company's current and projected NOLs as used in the analyses; (iii) the actual inputs and assumptions

underlying the two different discount rate ranges selected by Lazard; and (iv) the perpetuity growth rate ranges implied by Lazard's analysis.

34. When a bankers' endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Furthermore, the disclosure of projected financial information provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. This information is therefore material, and must be disclosed if Calpine's stockholders are to make a fully informed decision.

35. Without such undisclosed information, Calpine stockholders cannot evaluate for themselves whether the financial analyses performed by Lazard were based on reliable inputs and assumptions, or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can fully evaluate the extent to which Lazard's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

36. The omission of this information renders the following sections in the Proxy Statement false and/or materially misleading in contravention of the Exchange Act: (i) "Opinion of Calpine's Financial Advisor;" and (ii) "Background of the Merger."

*Material Omissions Concerning Lazard's Conflicts of Interest*

37. With regard to the potential conflicts of interest faced by Lazard, the Proxy Statement fails to disclose material information concerning the relationship that Lazard had with either Calpine, Energy Capital Partners, or their affiliates in the past.

38.     Due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, full disclosure of investment banker compensation and all potential conflicts is necessary for stockholders to have a materially complete sense of the conflicts of interests operating in the background. As detailed in the Proxy Statement, Lazard played an outsized role in exploration, selection, and implementation of this merger, however, the Proxy Statement omits to disclose whether Lazard has provided any financial or advisory services to either Calpine, Energy Capital Partners, or their affiliates in the past, and if so, the nature and timing of those services, as well as the amount of compensation Lazard earned in connection with those services. This information must be disclosed so that Plaintiff can understand whether, and to what extent, Lazard's potential conflicts may impact the banker's valuation analyses or support for the transaction Absent this information, Calpine stockholder are unable to evaluate whether potential conflicts of interest exist.

39.     The omission of this information renders certain portions of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act including, inter alia, the following sections of the Proxy Statement: (i) "Opinion of Calpine's Financial Advisor;" (ii) "Background of the Merger;" and (iii) "Recommendation of the Calpine Board; Reasons for the Merger."

40.     Based on the foregoing, Calpine public shareholders lack critical information necessary to evaluate whether the Proposed Transaction truly maximizes shareholder value and serves their interests. Moreover, without the key financial information and related disclosures, Calpine public shareholders cannot gauge the accuracy and reliability of the financial analyses performed by Lazard, and whether they can reasonably rely on their respective fairness opinions.

41. Accordingly, Plaintiff seeks, among other things, the following relief: (i) enjoinment of the Proposed Transaction; or (ii) rescission of the Proposed Transaction in the event that it is consummated and to recover damages resulting from Defendants' misconduct.

## CLAIMS FOR RELIEF

## COUNT I

### Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.

44. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

45. Specifically, the Proxy Statement violates Section 14(a) and Rule 14a-9 because it is materially misleading and omits material facts, as set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy Statement is materially misleading and omitted material facts that are necessary to render the statements that are made non-misleading.

46. All of the relevant information concerning the Company's financial projections was readily available to all Defendants at all relevant times. The Individual Defendants had

actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, or were grossly negligent in failing to know.

47. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his right to cast a properly informed vote on the Proposed Transaction.

48. Plaintiff has no adequate remedy at law.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

49. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

50. The Individual Defendants acted as controlling persons of Calpine within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Calpine, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

51. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

52. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

53. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

54. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

56. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) declaring that the Proxy Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(B) preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

(C) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(D) awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

(E) awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

(F) granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: November 17, 2017                      **KENDALL LAW GROUP, PLLC**

                        By:      */s/    Jamie J. McKey*
                               Jamie J. McKey
                               Texas Bar No. 24045262
                               jmckey@kendalllawgroup.com
                               Joe Kendall
                               Texas Bar No. 11260700
                               jkendall@kendalllawgroup.com
                               3232 McKinney Avenue, Suite 700
                               Dallas, TX 75204
                               Telephone:  (214) 744-3000
                               Facsimile:  (214) 744-3015

                               **OF COUNSEL:**

                               **LEVI & KORSINSKY LLP**
                               Donald J. Enright (to be admitted *pro hac vice*)
                               Elizabeth K. Tripodi (to be admitted *pro hac vice*)
                               1101 30th Street, N.W., Suite 115
                               Washington, D.C. 20007
                               Telephone: (202) 524-4290
                               Facsimile: (202) 333-2121
                               Email: denright@zlk.com
                               etripodi@zlk.com

                               *Attorneys for Plaintiff*